UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KENDALL WARE, SYDNEY PARTIN,           :
HALEY SOMMER, and                      :
CASSIA HARTING-SMITH,                   :
                                        :
          Plaintiffs,                  :
                                        :
                                        :
v.                                      :   Case No. 2:22-cv-212
                                        :
THE UNIVERSITY OF VERMONT AND           :
STATE AGRICULTURAL COLLEGE, THE         :
BOARD OF TRUSTEES OF THE                :
UNIVERSITY OF VERMONT AND STATE         :
AGRICULTURAL COLLEGE, NICHOLAS          :
STANTON, KATHERINE SPENCE, TARYN        :
MORAN, JEFFREY SCHULMAN, KRISTA         :
BALOGH, JOSEPH RUSSELL, JOHN            :
BECKER, and OTHER UNIDENTIFIED          :
DEFENDANTS,                             :
                                        :
          Defendants.                  :

**OPINION AND ORDER**

Plaintiffs Kendall Ware, Sydney Partin, Haley Sommer, and

Cassia Harting-Smith have asked the court to compel the

production of materials currently being withheld by Defendants.

Plaintiffs also allege other deficiencies with Defendants'

production to date. For the foregoing reasons, Plaintiffs'

motion to compel discovery is denied in part as premature and

granted in part.

**<u>Background</u>**

The plaintiffs are current and former students at the University of Vermont ("UVM"") who each allege that they were sexually assaulted while at UVM. Individually and collectively, they have brought claims under state and federal law against several defendants including UVM, its Board of Trustees, and various administrators. On March 7, 2024, the Court issued an Opinion and Order dismissing some claims while allowing others to continue. ECF No. 45.

Shortly thereafter, the parties agreed upon a discovery schedule and process. ECF No. 49. A few months later, the parties proposed and were granted a joint motion to extend the discovery schedule. ECF No. 54. The Court then granted a proposed joint Confidentiality Agreement which governs the disclosure and use of information produced during discovery. ECF No. 56. The Court has since granted additional extensions to the discovery schedule agreed to by the parties. ECF Nos. 59, 62, 72. Over this time, the parties have regularly conferred on their discovery obligations.

On April 11, 2025, Plaintiffs filed a Motion to Compel Certain Documents Being Withheld Due to Asserted FERPA Privilege. ECF No. 63. Plaintiffs had requested a broad range of documents from Defendants which are relevant to several claims they continue to pursue following the Court's March 7, 2024

Order. Defendant UVM had been producing some materials under the discovery and confidentiality agreements, but UVM had so far resisted the collection and production of some materials which it believed were protected by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.[1]  ECF No. 63-4. Defendants had indicated that they would not collect or produce such materials until the Court issued an order addressing the applicability of FERPA. *Id.* Defendants had further suggested it was Plaintiffs' prerogative to seek such an order, *id.*, resulting in the instant motion.

Defendant UVM filed its response in opposition to Plaintiffs' motion on May 9, 2025. ECF No. 67. Plaintiffs filed their reply on June 6, 2025. ECF No. 70. The motion is now ripe.

## Discussion

I.    **FERPA and Discovery Limitations**

The parties dispute the proper application of FERPA to Plaintiffs' discovery requests which fall broadly into three categories. First, Plaintiffs have requested their own

---

[1] Plaintiffs seek discovery from multiple Defendants, including UVM, but UVM is the Defendant litigating this issue, presumably because UVM may be subject to consequences for violations of FERPA. The Court understands that all Defendants share the same counsel, and that counsel is coordinating the response to discovery across all Defendants. *See* ECF No. 63-4. For the purposes of this motion, the parties do not distinguish the responsibilities or obligations of the various Defendants, if any, and neither does the Court.

educational records along with the educational records of their alleged assailants, unredacted. These records will likely be most relevant to Plaintiffs' "post-assault" and other state and federal claims. Second, Plaintiffs have requested documents related to task forces, audits, investigations, and complaints regarding sexual misconduct and other prohibited behavior within the UVM community. These documents will likely be most relevant to Plaintiffs' "pre-assault" claims. Third, Plaintiffs have requested documents related to two specific non-party students who spoke publicly following incidents similar to those of some Plaintiffs. These records may be relevant to several categories of Plaintiffs' claims. Both parties seek the Court's resolution of the extent to which FERPA bars or limits any or all categories of Plaintiffs' discovery requests.

### a. FERPA

FERPA conditions the receipt of certain federal funds by universities such as UVM on the limitation of circumstances under which those universities may release educational records. 20 U.S.C. § 1232g(b). Plaintiffs concede that "the records they seek are educational records under FERPA." ECF No. 63 at 7. The limitations on release of educational records under FERPA are broad, but they are subject to specific carveouts. One specific carveout involves "information [ ] furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena." 20

U.S.C. § 1232g(b)(2)(B). Neither the plain text of the statute nor of the implementing regulation, 34 C.F.R. § 99.31(a)(9)(i), instruct courts to limit the scope of discovery where educational records are at issue.

Defendants acknowledge that "Plaintiffs have an unquestionable right to pursue discovery," ECF No. 67 at 2, but they contend that FERPA counsels against requiring disclosure of much of what Plaintiffs have requested. Defendants concede that "FERPA admittedly does not by its terms limit discovery of school records under the Federal Rules of Civil Procedure," but they argue that "Congressional policy expressed in FERPA places a significantly heavier burden on a party seeking access to student records to justify disclosure . . . given that students have substantial privacy and confidentiality interests in their school records." ECF No. 67 at 5 (quoting *Rios v. Read*, 73 F.R.D. 589, 598 (E.D.N.Y. 1977) (cleaned up)). Given the nature of this case, many of the records Plaintiffs have requested are likely to be sensitive.

Plaintiffs propose that the Court adopt a two-stage test derived from *Rios v. Read* to determine which records should be released. 73 F.R.D. at 599. The test requires (1) the moving party to "establish that there is a genuine need for the information in the records sought which outweigh the eligible students' privacy interests" and (2) the Court to "assess

whether the request is proportional to the needs of the case as necessitated by Fed. R. Civ. P. 26." ECF No. 63 at 8 (cleaned up). Defendants propose an effectively identical approach. ECF No. 67 at 4-5.

However, it is not clear to the Court that such a two-stage test is the necessary or appropriate analysis. Even the *Rios* court, cited by both parties, found that "[i]t is obvious, however, that [FERPA] does not provide a privilege against disclosure of student records." 73 F.R.D. at 598. The remainder of the *Rios* court's analysis of FERPA-required discovery limitations relied on "Congressional policy" as derived from a scant record of legislative history. 73 F.R.D. at 597 ("Since the amendments were not the subject of legislative committee inquiry, traditional legislative history in the form of hearings and reports is not available."). Indeed none of the limited legislative history cited by the *Rios* court concerns the judicial-order-exception to FERPA's baseline protection of student records. *See id.* at 597-600.

More recently, district courts in this circuit have largely blended an application of *Rios* with Rule 26's requirements without clearly defining what showing FERPA may require from Plaintiffs in this context. *See, e.g., Dennis McConkey v. The Churchill School and Center,* 2025 WL 1928552, at *2 (S.D.N.Y. July 14, 2025); *Doe v. Yale Univ.,* 564 F. Supp. 3d 11, 21 (D.

Conn. 2021); *Doe v. Princeton Univ.,* 2024 WL 1375948, at *5 (D.N.J. Apr. 1, 2024). Neither these cases nor *Rios* provide a discernable principle for how a court should implement the purported first step of the test. Other courts in this circuit have not mentioned the standard from *Rios* at all when weighing similar FERPA discovery arguments. *See*, *e.g., Nastasia v. New Fairfield Sch. Dist.*, 2006 WL 1699599, at *1 (D. Conn. June 19, 2006); *Metcalf v. Yale Univ.,* 2017 WL 627423, at *4 (D. Conn. Feb. 15, 2017).

Still, the *Rios* court was correct that FERPA reflects a "Congressional policy" to provide protection for student records, even in court proceedings. This policy is reflected in the statutory requirement for notice to students so that they may decide whether to seek a protective order. A requirement of notice to non-parties that records about them will be produced is not found in most other discovery contexts. But beyond that there is nothing in the FERPA statutory text or implementing regulations, nor in any binding precedent, that indicates that courts considering discovery requests must deploy a discrete standard for educational records as a threshold inquiry before implementing Rule 26.

Regardless, the privacy of non-party students is a relevant consideration for the scope of discovery in this case. Rule 26 contains two provisions that allow for consideration of the

privacy interests of the non-party students. Rule 26(b)(1) requires that discovery be limited to information "that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Courts in this circuit have found that "the discovery rule of proportionality [ ] allows the Court to weigh the competing interests of the parties and also consider the privacy interests of third parties." *Coley v. Shufelt*, 2021 WL 5176651, at *3 (N.D.N.Y. Nov. 5, 2021); *see also Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 737 (9th Cir. 2024) ("For discovery purposes, those privacy considerations are generally considered either in Rule 26(b) proportionality analyses or as part of Rule 26(c) protective orders."). The Advisory Committee's Note to the 1970 Amendment of Rule 26 explains that "courts have recognized that interests in privacy may call for a measure of extra protection." Fed. R. Civ. P. 26 Adv. Comm. Note (1970); *see also* Johnson v. Nyack Hosp., 169 F.R.D. 550, 562 (S.D.N.Y. 1996) (reviewing the Advisory Committee note and finding in that case that "accordingly, the Court must consider whether the burdens imposed on the

8

hospitals' privacy and other interests sufficiently outweigh the needs of the parties to warrant relief.").The Court finds that in this case, privacy is relevant to the proportionality analysis under Rule 26(b). Furthermore, "[i]n the context of Rule 26(c) protection, the Second Circuit has explicitly recognized 'privacy interests' as a factor to be considered when balancing the parties' interests with respect to disclosure of materials." *Burgess v. Town of Wallingford*, 2012 WL 4344194, at *10 (D. Conn. Sep. 21, 2012) (citing *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995)).

Therefore, FERPA does not by itself shield a particular class of documents from disclosure in this litigation, but privacy interests located in Rule 26 are appropriate to consider as parties continue discovery. Some of the documents requested are likely to contain information about sexual assault, drugging, or other traumatic incidents which victims in particular may prefer to keep private, and that fact counsels narrowing discovery wherever possible.

Despite FERPA not operating as a categorical bar, the substantial privacy interests of non-party UVM students are accounted for in multiple ways in this case. First, discovery is proceeding under a confidentiality order which shields produced documents from public view, at least before trial. Plaintiffs have indicated that they are "open to amending or supplementing

it to further clarify protections covering student records
produced in discovery," ECF No. 70 at 5, and the Court expects
that Defendants will avail themselves of that opportunity
promptly if modification would better protect the privacy of
non-party students. Second, the vast majority of students'
educational records produced in this case will be redacted of
all Personally Identifiable Information (PII), as discussed in
more detail below. Third, FERPA requires that Defendants notify
all individuals whose records are subject to production so that
they may decide whether to seek a protective order. "Rule 26(c)
furthers a substantial governmental interest," *Seattle Times Co.
v. Rhinehart*, 467 U.S. 20, 34 (1984), because "discovery also
may seriously implicate privacy interests of litigants and third
parties." *Id.* at 35. Much of the privacy interest at stake in
this case belongs to non-party students, and the Court will
closely evaluate any Rule 26(c) protective orders sought by
them. Finally, Defendants' expense in this case, which is a
consideration under Rule 26(b)(1), is likely to be substantial
for the requested student records. Not only must Defendants
locate and review each requested document, but they must also
often redact PII and notify the involved students prior to
production. These necessary expenses factor into the
proportionality analysis for Plaintiffs' requests. Therefore,
the scope of discovery in this case may be limited to a narrower

set of documents than Plaintiffs may be entitled to in another context.

### b. Scope of Discovery

Defendants raise multiple concerns with the scope of Plaintiffs discovery requests. Setting aside FERPA, Defendants argue that the parties have not "adequately conferred regarding UVM's other objections to the 38 requests at issue." ECF No. 67 at 12.  Plaintiffs provide a history of the parties' dialogue on discovery so far and allege that Defendants have largely ignored other scope of discovery considerations until FERPA has been addressed by the Court. Plaintiffs argue that "Plaintiffs' motion to compel should not be denied for failure to adequately meet and confer." ECF No. 70 at 8. While the Court does not fault Plaintiffs for not adequately conferring with Defendants on scope of discovery before filing their motion, the Court finds that additional discussion on the scope of discovery is appropriate following this ruling. Therefore, the motion to compel is denied as premature. The parties are ordered to meet and confer to determine the appropriate scope of discovery within 30 days of this Order now that the FERPA issue has been resolved.

To assist the parties in their narrowing of discovery, the Court has reviewed Plaintiffs' requests for production (RFPs) and finds that the primary concerns are with the time frame and

breadth of some requests which appear to seek information beyond
what is likely necessary, relevant, or proportional to
Plaintiffs' case. For example, as Defendants note, ECF No. 67 at
11, Plaintiffs' RFP No. 28 seeks all reports of alcohol abuse at
UVM spanning 16 years which would require voluminous production.
Some of Plaintiffs' claims involve alcohol abuse, *see, e.g.,* ECF
No. 22 at 2, yet this broad a request may run afoul of Rule 26.
A narrower version of the alcohol abuse request is likely
appropriate. The same RFP seeks reports of sexual misconduct
which are much more likely to have probative value in this case.
Still, the parties should consider whether a sexual misconduct
report from 2007 is necessary to establish a pattern that
Plaintiffs allege continues on through 2023, and whether any
further narrowing is appropriate. Similarly, RFP No. 19 involves
documents concerning disciplinary infractions *at any time* by a
fraternity related to alcohol violations and should likely be
narrowed to comport with Rule 26.

Defendants have also raised specific objections related to
a discrete group of three non-party students who are alleged
assailants of Plaintiffs. ECF No. 67 at 5-9. Defendants' primary
objections to producing these records relates to FERPA's
purported policy prohibiting disclosure, but the Court does not
find those objections compelling, as discussed above. Defendants
also object on the bases that UVM either has not conducted an

investigation of these individuals or that any such an
investigation did not find the individuals responsible. *Id.*
Given that the premise of some of Plaintiffs' claims is that
UVM's investigation policies and procedures were flawed, these
objections do not counsel in favor of limiting discovery of
these records. Defendants have also raised a relevance challenge
to some of the requests related to Mr. Lamb. *Id.* at 6. While
many of Plaintiffs' requests highlighted by Defendants are
likely appropriate, RFP No. 39, which generally seeks production
of all documents in the custody of UVM athletic department
concerning Mr. Lamb, is an example of an overbroad request that
the parties should discuss narrowing appropriately.

For those reasons, the Court finds that it is premature
today to compel the production of the materials Plaintiffs seek.

## II.  Organization of Defendant's Production

Plaintiffs have faulted Defendants for not identifying
which produced documents are responsive to Plaintiffs'
individual requests for production. ECF No. 62 at 13-14; ECF No.
70 at 8-10. Plaintiffs cite to Fed. R. Civ. P. 34(b)(2)(E)(i)
which requires that a producing party "produce documents as they
are kept in the usual course of business or [ ] organize and
label them to correspond to the categories in the request."
Plaintiffs argue that Defendants have not availed themselves of
either option, so Plaintiffs now request that the Court require

13

Defendants to produce a log indicating which produced documents are responsive to which requests.

Defendants have, by their own admission, not organized and labeled documents to correspond to categories in requests, which they have characterized as a "meaningless exercise in busy-work" which is "not required by the Rules." ECF No. 67 at 13. Instead, Defendants argue that their productions comply with Fed. R. Civ. P. 34 because produced files have been "in fully text searchable format, as PDF files accompanied by load files containing key metadata." *Id*. at 14. This format, Defendants argue, is compliant with Rule 34(b)(2)(E) because the documents produced to date "are largely self-explanatory and, again, have been produced in a 'reasonably usable form'" in accordance with Rule 34(b)(2)(E)(ii). *Id* at 15. As an apparent gesture of goodwill, Defendants have now provided "a basic index of the documents produced to date, along with the category of the subject matter of each document," *id.*, but Defendants also disclaim any plans or obligation to produce such an index going forward, *id.* at n.3.

Defendants are correct that they are not required by the Rules to organize and label documents to correspond to requests, but they are incorrect that their production is compliant with Rule 34. That rule offers Defendants a choice for how to organize the documents they produce. If Defendants choose not to

organize and label their productions, they "must produce
documents as they are kept in the usual course of business."
Fed. R. Civ. P. 34(b)(2)(E)(i). "The key to this dichotomy is
the assumption that in either case the documents will be
organized—that records kept in the usual course of business
would not be maintained in a haphazard fashion. Thus regardless
of the form chosen, the production will be useful to the
requesting party, and neither choice will inject unnecessary
time and cost into litigation." *S.E.C. v. Collins & Aikman
Corp.*, 256 F.R.D. 403, 411 (S.D.N.Y. 2009)

Defendants cite to the Wright & Miller treatise for the
proposition that they may choose the form of production, ECF No.
67 at 14, but in doing so they collapse the inquiry between
Rules 34(b)(2)(E)(i) which governs *organization* of produced
documents and 34(b)(2)(E)(ii) which governs *format* of the same.
Plaintiffs have not raised complaints about Defendants'
production format, which appears to be compliant with Rule
34(b)(2)(E)(ii). However, "Rule 34(b)(2)(E) continues to require
that production of electronically stored information either be
organized in a comprehensible way or include guidance on how to
locate desired information." 8B Charles Alan Wright & Arthur R.
Miller, Federal Practice & Procedure § 2219 at n.2 (3d ed.
2021). "This requirement was added to the rule to guard against
risks that a producing party might attempt to rearrange

materials to obscure the importance of certain items." *Id.*
"Allowing the production of documents as they 'are actually kept
in the usual course of business' was intended to minimize the
burden of production while maintaining the 'internal logic
reflecting business use.'" *Collins & Aikman Corp.*, 256 F.R.D. at
409 (S.D.N.Y. 2009) (quoting *Second Report of the Special
Committee for the Study of Discovery Abuse*, 92 F.R.D. 137, 177
(1980)). Combining all documents together in one folder or file
prior to production does not suffice, unless that is truly how
Defendants' store these documents in the usual course of their
business. Given the breadth of topics of these documents, that
seems exceedingly unlikely.

In other words, if Defendants do not choose to organize and
label documents as responsive to specific requests going
forward, they must produce the documents organized as they
currently are on Defendants' systems. Both parties should meet
and confer before the next production to ensure a mutual
understanding of what that organization will look like. For the
documents that have already been produced, which according to
Defendants' Production Index are not particularly numerous, ECF
No. 67-2, Defendants must now label them as responsive to
specific requests. To the extent that this is "largely self-
explanatory," ECF No. 67 at 15, Defendants' burden will be
minimal.

Separately, Defendants object to the production of
documents related to two specific non-party students who are
alleged victims. ECF No. 67 at 11. Here, Defendants argue that
"it is difficult to comprehend how records could be redacted and
produced *in response to these specific requests* without
necessarily disclosing the identity of the students referenced
therein." *Id.* at 11-12 (emphasis added). But as Defendants
themselves have been arguing in other contexts, they are not
required to produce these redacted documents in response to
those specific requests. They may produce those documents
organized as they are actually kept in the usual course of
business. And to the extent that these two specific non-party
students do not wish even redacted records to be disclosed to
Plaintiffs, they may seek a protective order from the Court
following their FERPA-required notification from UVM.

## III. FERPA Log and Redactions

Defendants object to the production of many documents even
when redacted, arguing that "privacy concerns cannot be cured by
redaction where the student's identity is ascertainable." ECF
No. 67 at 10. Defendants do not cite to any case for this
proposition but point the Court to 34 C.F.R. § 99.31(b)(1),
which governs the release of de-identified educational records.
However, as discussed above, the judicial order exception to
FERPA's release restrictions governs here. Defendants argue that

they may be required to "make an individualized, case-by-case assessment of which files contained sufficient details, together with other publicly available information, to allow identification of the student(s) involved." ECF No. 67 at 10-11. The Court is unaware of any authority that states that parties redacting and producing documents must ensure that nobody can use other sources to piece together redacted information. Neither the Court nor the parties can be expected to control for "the information disseminated in the public sphere regarding alleged assaults in recent years." *Id.* at 10. Fortunately, privacy concerns in this case are not addressed solely through the redaction process. As noted previously, redactions, the confidentiality order, the opportunity to seek a protective order, and narrowing discovery all serve to protect students' privacy.

Plaintiffs have requested that Defendants produce a log of documents withheld on the basis of FERPA. ECF No. 63 at 13. Given the Court's analysis above, FERPA is not a basis for withholding any documents, so no log should be necessary for such documents. The Court anticipates that Defendants will redact much of the PII of non-party students (excepting alleged assailants) as Plaintiffs have proposed, ECF No. 70 at 4. Defendants have expressed concern that UVM "should not bear the burden of including each such redacted document on its privilege

log." ECF No. 67 at 3. The Court does not find that redactions of PII, as defined by FERPA and associated regulations, require logging.  However, where redactions obscure the names of non-party individuals, Defendants should assign consistent, unique pseudonyms to those individuals across their entire productions to ensure that the documents are useable by Plaintiffs. For example, an individual whose real name is replaced with Jane Doe 8 on one document should be Jane Doe 8 on another document. This practice will ensure that redacted documents are still sufficiently useable by Plaintiffs.

## IV.  Required Notice

The Court anticipates that following this Order, the parties will confer to narrow the scope of requests and Defendants will begin production of responsive educational records without further mediation from the Court. FERPA generally requires that universities such as UVM provide notice to parents and students whose education records will be furnished in compliance with this order in advance. 20 U.S.C. § 1232g(b)(2). Implementing regulations have interpreted this requirement to require "reasonable effort" by the university to notify the parent or student, "so that the parent or eligible student may seek protective action." 34 C.F.R. § 99.31(a)(9)(ii).

Defendant UVM has requested that the Court "provide sufficient time for notice and a meaningful opportunity for students to object." ECF No. 67 at 16. Plaintiffs "do not oppose giving these students or other non-party students notice of their records being released." ECF No. 70 at 2. The Court notes that the law does not require UVM to receive affirmative permission from non-party students to produce records about them. Neither party has proposed a specific amount of time that UVM should be afforded to provide notice or for students to seek protective action from the Court. The Court instructs the parties to confer and arrive at a consensus for such a timeline, guided by available precedent, Department of Education guidance, and industry standards. UVM shall file a sample notice with the Court when the first notice is transmitted to non-party students so that the Court may prepare for any filings from affected students.

### Conclusion

For the foregoing reasons, Plaintiffs' motion to compel discovery is denied in part as premature and granted in part. This Opinion and Order provides the parties with guidance on the extent to which FERPA and Rule 26 govern the parties' discovery obligations going forward. Defendants are ordered to organize and label documents that have already been produced as responsive to specific requests. The parties are further ordere

to meet and confer on the scope of Plaintiffs' discovery
requests within 30 days.

        DATED at Burlington, in the District of Vermont, this 11th
day of August, 2025.

                              /s/ William K. Sessions III
                              Hon. William K. Sessions III
                              U.S. District Court Judge